IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUMAN PARKS,<br>　　　Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 25-CV-2363 |
| MONTGOMERY COUNTY, *et al.*,<br>　　　Defendants. | :<br>:<br>: |

<u>MEMORANDUM</u>

GALLAGHER, J.                                                                                                                              AUGUST 15, 2025

      Truman Parks, a pretrial detainee incarcerated at the Montgomery County Correctional Facility ("MCCF"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 naming Montgomery County, MCCF Warden Sean P. McGee, and MCCF's Medical Contractor, PrimeCare Medical, Inc. ("PrimeCare"), as Defendants. Parks also seeks leave to proceed *in forma pauperis*. For the following reasons, leave to proceed *in forma pauperis* will be granted and the Complaint will be dismissed. Parks will be given an opportunity to file an amended complaint.

I.     FACTUAL ALLEGATIONS[1]

      Parks alleges that his due process rights were violated when he was removed from the MCCF's Subutex program ("the program") provided through PrimeCare.[2] (Compl. at 5.) Parks

---

      [1] Parks used the form complaint available to unrepresented litigants to file his Complaint ("Compl.") and attached a copy of his inmate grievance appeal and MCCF's response to his appeal of the denial of that grievance. (ECF No. 2.) The Court considers the entirety of the submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

      [2] The Court may take judicial notice of the information published on a government website. *See, e.g., Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017). Medications for opioid use disorder, such as suboxone, in combination with counseling and behavioral

is dependent on opioids and "suboxone/Subutex are the only medications which subdues [his] urge to use." (*Id*.) He asserts that in March 2024, he "was caught attempting to divert [his] medication" and was removed from the program. (*Id*.) He claims this removal did not follow the program's "3-Strike policy," where "Strike-1 is a warning, Strike-2 is a dosage cut, and Strike-3 is removal" from the program. (*Id*.) He also claims the removal did not follow "the policy of the inmate handbook, which states any policy change must be posted on the housing unit for three days," and the program's "3-Strike rule" was "never changed to a 1-Strike Policy." (*Id*.) He claims his removal from the program was after his "first incident" whereas other "inmates similarly situated got 3-strikes." (*Id*.) Furthermore, "X-rays were given to determine if [he] swallowed plastic to divert meds and were found to be negative," so he avers "there is no excuse not to follow the 3-Strike Policy." (*Id*.) As a result of these events, Parks "sustain[ed] cravings and withdrawal symptoms for opioid dependence." (*Id*.)

Parks filed a grievance related to his removal from the program, claiming that PrimeCare, who is supervised by Warden McGee, "arbitrarily decided not to follow the 3-Strike Policy." (*Id*. at 6.) The grievance appears to have been denied by Grievance Officer Conner based on Parks's copy of his inmate grievance appeal attached to his Complaint. (*Id*. at 12-13.) Parks alleges in his appeal that "Mr. Conner states that he is unable to overturn the decision of a medical provider; that [he] was removed from the program for attempting to divert [his] meds" even though there were no changes to the three-strike policy, and he was removed after his first incident. (*Id*.) Parks's also attached MCCF's response to his appeal, which reflects that the appeal was denied on March 24, 2025. (*Id*. at 14.)

---

therapies, is effective in the treatment of opioid use disorders and can help some people to sustain recovery. *See* https://www.fda.gov/drugs/information-drug-class/information-about-medication-assisted-treatment-mat (last visited August 4, 2025).

He alleges Fourteenth Amendment claims pursuant to the Due Process Clause and the Equal Protection Clause. (*Id*. at 3.) He asserts that Warden McGee is liable "as an agent of Montgomery County acting as Warden" of MCCF. (*Id*. at 4.) He requests a Court Order that Defendants "follow the 3-Strike Policy, and the policy of the inmate handbook" and place him back into the program. (*Id*. at 5.) He also requests money damages and for MCCF to pay the costs associated with filing this case. (*Id*.)

## II.  STANDARD OF REVIEW

The Court grants Parks leave to proceed *in forma pauperis*[3] because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other*

---

[3] In response to a prior Order directing Parks to provide his prisoner trust fund account statement (ECF No. 4), he submitted the account statement as ordered. (ECF No. 5.)

[4] Because Parks is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

*grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Parks is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

**III.    DISCUSSION**

Parks asserts his constitutional claims pursuant to § 1983, the vehicle by which such claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires

particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207).

### A. *Monell* Claims

Parks seeks to present claims against Montgomery County and PrimeCare, presumably based on an unidentified PrimeCare employee's decision to remove him from the program. (*See* Compl. at 5, 12.) To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Local governments, such as Montgomery County, can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell*, 436 U.S. at 665-83. This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60. In other words, municipal liability cannot be predicated on a *respondeat superior* basis. *See Monell,* 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original).

Rather, to state a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See id.* at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to

5

action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original). Here, Parks does not claim that Montgomery County has a policy or custom that violated a constitutional right, his claims are based on the alleged actions that occurred in connection with a program run by PrimeCare, a contractor of MCCF. Because there is no *respondeat superior* for municipal liability under § 1983,[5] the claim against Montgomery County will be dismissed.[6]

Similarly, although a private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances, the United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583) (applying *Monell* to claims against medical contractor).

---

[5] Parks also alleges a failure to follow the policy of the inmate handbook. (*See* Compl. at 5.) This claim not only fails under this same reasoning, but also because many courts have held that corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures. *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (*citing Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).

[6] In drafting his Complaint, Parks checked the box on the form he used indicating that he seeks to name Warden McGee in his official capacity. (*See* Compl. at 2.) However, claims against Warden McGee in his official capacity are indistinguishable from the claims against Montgomery County, the governmental entity who employs him. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell,* 436 U.S. at 690, n. 55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, a suit against Warden McGee in his official capacity is duplicative of Parks's claims against Montgomery County and will be dismissed with prejudice.

Rather, in order to hold a private health care company like PrimeCare liable for a constitutional violation under § 1983, Parks must allege PrimeCare had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).[7]

Parks does not allege that PrimeCare's three-strike policy caused a constitutional violation under § 1983, he alleges that the unidentified employee who made the decision not to follow the PrimeCare's policy caused the violation. Because PrimeCare cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability, Park's claims against PrimeCare are not plausible as pled and will be dismissed without prejudice.

### B. Equal Protection Clause Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

---

[7] A plaintiff may also state a basis for liability against an entity like PrimeCare by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom., Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

7

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Because Parks does not claim discrimination based on membership in a protected class, the Court liberally construes his allegations as asserting a claim based on a "class of one" theory, in which he must allege he was intentionally treated differently from others similarly situated inmates and that there was no rational basis for the treatment. *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also, generally, Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'").

Parks generally asserts that he was removed the program after his "first incident" whereas other "inmates similarly situated got 3-strikes." (Compl. at 5.) However, he does not allege any details about this claim. Without more specific factual allegations as to the allegedly similarly situated parties and who treated him differently, this deficiency is fatal to his claim. *See, e.g., Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment"); *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Beitler v. City of*

*Allentown*, No. 22-104, 2022 WL 768151, at *8 (E.D. Pa. Mar. 14, 2022) ("We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently."). Because Parks does not allege who treated him differently from whom, his Equal Protection Clause claim will be dismissed for failing to state a claim. Parks will, however, be granted leave to amend on this claim.

### C.     Failure to Provide Medical Treatment Claim

It is possible Parks intended to raise a failure to provide medical treatment claim based the denial of medications for his opioid addiction. *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[8] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference

---

[8] As it appears that Parks was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Additionally, as explained above, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207.

Although Parks alleges that he is dependent on opioids and suboxone/Subutex are the only medications that help with his addiction, which he no longer receives because of removal from the program (*see* Compl. at 5), he does not name the prison official who was *personally responsible* for Parks being deprived of his medications. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Furthermore, he fails to allege that the prison official was aware of and disregarded an excessive risk to his health. Thus, his claim for failure to provide medical treatment fails to allege a plausible claim and will be dismissed without prejudice. However, because it may be possible for Parks to name a proper defendant and allege additional facts to state a plausible claim here, he will be permitted an opportunity to file an amended complaint.

### D. Individual Capacity Claims

For the reasons explained *supra*, the official capacity claims against Warden McGee will be dismissed as duplicative of those against Montgomery County. Parks appears, however, not

10

to have understood the implication of checking only the official capacity box for Warden McGee. Because Parks's Complaint could be understood as seeking to raise a civil rights violation against Warden McGee in his individual capacity, the Court will liberally construe the Complaint to assert a claim against him in his individual capacity as well. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

a. **Claims Based on Supervisory Authority**

It appears that Parks is naming Warden McGee as a defendant merely because he holds a position of supervisory authority in the MCCF. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Thus,

11

the mere fact that Warden McGee was "in charge" of the MCCF does not state a plausible claim against him for Parks's removal from the program.

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Since there is no allegation that Warden McGee was personally responsible for Park's removal from the program, any liability against him must be premised, if at all, on facts alleging deliberate indifference to the consequences of a policy he established that caused constitutional harm.

This type of liability requires a plaintiff to "identify a supervisory policy or practice that the supervisor failed to employ, and [allege] that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d

at 227.  A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*; *Chavarriaga*, 806 F.3d at 227.

Parks alleges only that Warden McGee supervised PrimeCare, who "arbitrarily decided not to follow the 3-Strike Policy." (Compl. at 6.)  These allegations are insufficient to state a plausible claim that Warden McGee, acting with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused Parks to suffer a constitutional harm.  To the extent that Parks asserts a failure-to-train claim based on an act of a subordinate official, because the Court has determined that there are no plausible underlying claims, Warden McGee may not be held liable under this type of theory either.  *Allen*, 804 F. App'x at 127.  Accordingly, the individual capacity supervisory liability claims against Warden McGee will be dismissed without prejudice.

### b. Claims Based on Grievances

Finally, to the extent Parks attempted to assert a stand-alone claim against Warden McGee based on the grievance process, it will be dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, any allegations intended to be predicated on failures of the grievance process or improper handling of or response to

13

grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances.") (internal citation omitted); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates") (internal quotations and citations omitted).

Furthermore, a prison official's involvement in the grievance process is not sufficient to allege liability under § 1983 for the events that gave rise to the grievance. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). All claims based on the handling of grievances will be dismissed with prejudice.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Parks leave to proceed *in forma pauperis* and dismiss the Complaint. Any official capacity claims against Warden McGee, any claims based on the failure to follow the inmate handbook, and any claims based on grievances will be

dismissed with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile").  His remaining claims are dismissed without prejudice.  Parks will be provided an opportunity to file an amended complaint if he is capable of curing the defects the Court has identified in the claims dismissed without prejudice.

    An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**


*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**